UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

FILED

17 MAR 24  PM 12: 04

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

| | | |
|---|---|---|
| CHRISTINE J. FORGUES | ) | |
| | ) | Case No. 1:16-cv-2576 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | JUDGE CHRISTOPHER BOYKO |
| | ) | |
| CARPENTER LIPPS & LELAND LLP; | ) | MAG. JUDGE GREENBERG |
| | ) | |
| DAVID A. WALLACE, ESQ.; | ) | |
| | ) | |
| DEUTSCHE BANK NATIONAL | ) | |
| TRUST COMPANY, AS TRUSTEE | ) | |
| FOR J.P. MORGAN MORTGAGE | ) | |
| ACQUISITION TRUST 2007-CH5, | ) | |
| ASSET BACKED PASS-THROUGH | ) | |
| CERTIFICATES, SERIES 2007-CH5 | ) | |
| | ) | |
| Defendants, | ) | |

**PLAINTIFF CHRISTINE J. FORGUES' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Unrepresented Consumer-Plaintiff, Christine J. Forgues, respectfully submits this her

opposition to the motion of the three Defendants pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss

claims she brought against them as debt collectors under the Fair Debt Collection Practices Act

("FDCPA"). The reasons for Plaintiff's opposition are set forth in the accompanying

Memorandum.

Respectfully submitted,

*Christine J. Forgues*

Christine J. Forgues
115 Terrace Drive
Johnstown, PA 15904
Cell: 216-323-6972
cjforgues2011@gmail.com

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... ii

TABLE OF AUTHORITIES ................................................................................................... iii

I.   BACKGROUND ................................................................................................................1

II.  LAW AND ARGUMENT ................................................................................................3

A.   Plaintiff concedes that § 1692g(a) claims, *but not § 1692g(b) claims*, against Wallace and Deutsche Bank *would be* barred by the statute of limitations *but for* the Plaintiff's assessment and invoice for damages within one year of the violation .........................................................................................................................4

B.   The First Amended Complaint raises a right to relief under the sole Count (FDCPA) above the speculative level. ...............................................................................4

  1.   There is a plausibly pled violation of § 1692g against each and every Defendant. ...........................................................................................................4

    a.   A reasonable jury could find that an animating purpose of the October 23, 2015 letter was to induce Ms. Forgues' consent to collection by foreclosure sale, thus making it more likely, triggering the requirements of § 1692g(a). ...............................................................................5

      i.   Under the Act, it is not a necessary element of a violation that the letter be an attempt to collect a debt, but only be "in connection with" one, as alleged. ..................................................................................5

      ii.   According to the CFPB and FTC in Hernandez, "Section 1692g(a) unambiguously imposes its notice requirement on "a debt collector," a term that encompasses all debt collectors, whether the first, second, or umpteenth to attempt to collect a particular debt." .........10

    b.   Defendants' argument that they were not required by § 1692g(b) to cease collection or validate the debt also fails for the reasons set forth by the CFPB and FTC in Hernandez. ...........................................................14

  2.   Congress made no exception in § 1692c(b) for any court in the specific list of persons excepted from the phrase "any person" regarding prohibited communications with third parties. ....................................................................14

  3.   The absence of any communication under § 1692c(c)(1) "to advise the consumer that the debt collector's further efforts are being terminated" was part of the debt collectors' plan to keep collecting anyway without disclosing the name of the creditor essential to validation of the debt, § 1692g(a)(2). ...................................................................................................15

4. Because CLL's initial communication did not (and could not) disclose the name of the creditor to whom the debt is owed as § 1692g requires, each of Defendants' communications "within the past year" are a use of materially false, deceptive, or misleading representation or means in connection with the collection of any debt under § 1692e...................................16

CONCLUSION.....................................................................................................20

PAGE LIMIT CERTIFICATION.........................................................................21

CERTIFICATE OF SERVICE..............................................................................22

## **TABLE OF AUTHORITIES**

### **Cases**

Asher v. Unarco Material Handling, Inc., No. 09-5158 (6th Cir. 3/3/2010)................................4

Bridge v. Ocwen Fed. Bank, FSB, 681 F.3d 355, 362 (6th Cir. 2012)......................................4, 7

Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984)..............3

Currier v. First Resolution Investment Corp., 762 F.3d 529, 535 (6th Cir. 2014) ........................9

Duncan v. Walker, 533 U.S. 167 (2001)...................................................................................18

Estep v. Manley Deas Kochalski, LLC, 552 Fed.App'x 502, 505 (6th Cir. 2014) ........................5

F.T.C. v. Check Inv'rs, Inc., 502 F.3d 159, 173 (3d Cir. 2007)..................................................18

Frey v. Gangwish, 970 F.2d 1516, (6th Cir. 1992).....................................................................4

Gearing v. Check Brokerage Corp., 233 F.3d 469, 472-73 (7th Cir. 2000)..................................9

Geary v. Green Tree Servicing, LLC, 2:14-cv-00522, S.D.Ohio (2015).......................................3

Gionis v. Javitch, Block, Rathbone, LLP, 238 F.App'x 24, 28-29, 30 (6th Cir. 2007)..................9

Glazer v. Chase Home Fin. LLC, 704 F.3d 453 (6th Cir. 2013) .................................................7

Goodson v. Bank of America, N.A., 600 Fed. Appx. 422, 430 (6th Cir. 2015)...........................5

Guerrero v. RJM Acquisitions LLC, 499 F.3d 926, 940 (9th Cir. 2007) (per curiam)................13

Heintz v. Jenkins, 514 U.S. 291, 292 (1995)........................................................................6, 15

Hernandez v. Williams, Zinman & Parham, P.C., No. 14-15672 (9th Cir., 07/20/2016)......passim

Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 91 (2d Cir. 2008)....................................19

Jacobson v. Healthcare Financial Services, Inc., 434 F.Supp.2d 133, 138 (E.D.N.Y. 2006) .......19

Janetos v. Fulton Friedman & Gullace, LLP, 15-1859 (7th Cir. 2016) ...............................17, 19

Jang v. A.M. Miller & Assocs., 122 F.3d 480, 483 (7th Cir. 1997) .........................................13

N.Y. State Dep't of Soc. Servs. v. Dublino, 413 U.S. 405, 419–20 (1973)..................................13

Paroline v. United States, 134 S. Ct. 1710, 1721 (2014) ...........................................................8

Porto Rico Ry., Light & Power Co. v. Mor, 253 U.S. 345, 348 (1920) ......................................8

Powell v. Palisades Acquisition XVI, LLC, 782 F.3d 119, 123 (4th Cir. 2014)...........................8

Renee McCray v. Federal Home Loan Mortgage, et al., 15-1444 (4th Cir. 10/07/2016)..............8

Sayyed v. Wolpoff & Abramson, 485 F.3d 226, 229-34 (4th Cir. 2007) ...........................8, 9, 15

Shimek v. Weissman, Nowack, Curry & Wilco, P.C., 374 F.3d 1011, 1014 (11th Cir. 2004).....12

Smith v. Transworld Sys., Inc., 953 F.2d 1025, 1031-32 (6th Cir. 1992)...................................12

Stratton v. Portfolio Recovery Assocs., LLC, 770 F.3d 443 (6th Cir. 10/24/2014) .....................15

TRW, Inc. v. Andrews, 534 U.S. 19 (2001).............................................................................18

Wilson v. Draper & Goldberg, P.L.L.C., 443 F.3d 373, 375-77 (4th Cir. 2006) ..........................8

**Statutes**

12 U.S.C. § 5512(b)(4)(B)........................................................................................................3

15 U.S.C. § 1692a(4)...............................................................................................................17

15 U.S.C. § 1692c(b)...............................................................................................................14

15 U.S.C. § 1692e...................................................................................................................17

15 U.S.C. § 1692g(a)...............................................................................................................10

15 U.S.C. § 1692g(a)(2)...........................................................................................................16

15 U.S.C. § 1692k(e)................................................................................................................3

15 U.S.C. § 1692l(b)(6)............................................................................................................3

15 U.S.C. § 1692l(d) ................................................................................................................3

**Other Materials**

Brief of Amici Curiae Consumer Financial Protection Bureau and Federal Trade Commission,
   Hernandez v. Williams, Zinman & Parham, P.C., 9th Cir., No. 14-15672, Dkt. No. 14, filed
   08/20/2014 .................................................................................................................3, 10

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

The Defendants' motion (Doc. 10) brought pursuant to Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of Plaintiff's First Amended Complaint, Doc. 5 ("FAC"). Defendants argue that Plaintiff's claims are either time-barred or implausible. For the reasons that follow, the arguments of the Defendants are utterly without merit as to whether Forgues states a claim against each of them for enforcement of liability under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. as amended ("FDCPA" or "Act") for violation of the Act "within the past year." The motion should be denied.

## I.  BACKGROUND

Defendants' motion places the most significant violation in the back pages. Defendants attempt to pick off each violation isolated from the main theory of the case—that Deutsche Bank is not the required "creditor" with respect to the debt, §§ 1692a(4), 1692g(a)(2), and their communications are false and misleading representations and means under § 1692e. Defendants plant seeds in the Background section to defeat this by suggesting an inchoate affirmative defense that Deutsche Bank "entered the picture when the Note was lodged in a trust in 2007" and that thereafter Forgues went into default, and only afterward "[t]he Mortgage was assigned to Deutsche Bank on May 14, 2010." Doc. 10, PageID# 114. This suggestion by counsel, using the words "lodged" and "in **_a_** trust," which do not identify the trust, is vague, nonspecific, ambiguous, non-evidentiary, outside the complaint, unsupported by exhibits, and cannot be considered. Defendants' suggestion does not contradict the publicly recorded Assignment of Mortgage, Doc. 5-5 at PageID # 86 which speaks for itself, and the inference that Chase **_thereby_** sold, transferred, and set over, without recourse to Deutsche Bank the Mortgage "**_together with the Promissory note secured thereby and referred to therein_**…" on May 14, 2010. Id.

1

Defendants' suggestion does not make it any less plausible that Deutsche Bank is a debt collector and not a creditor, as factually alleged. (See, e.g., FAC, ¶¶ 7, 14, 31, 42, 44, 45, 47, 48, 49, 51, 54, 63.) If Defendants attempt to make such a defense out of the suggestion that Deutsche Bank received transfer of the debt by transfer of the Note prior to the Assignment of Mortgage, prior to default, that would mean that the Assignment of Mortgage provided to Forgues repeatedly—and again very recently—is itself false and or deceptive communication under § 1692e and Plaintiff will seek to amend her complaint on those grounds at that juncture.

Additionally, Plaintiff obtained Defendants' tacit agreement that they waive affirmative defenses by their failure to satisfy the Notice of Dispute. See Exhibits, Doc. ## 5-2, 5-3, 5-4, each of which contained the following notice:

> IMPORTANT DISCLOSURE: This notice to you is pursuant to "private right of action" granted by Congress to enforce compliance with the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k; your failure to satisfy this request pursuant to your duty and obligation under the Act, 15 U.S.C. § 1692g (a)(1), (2) (5), and (b), will be construed as your absolute waiver of any and all claims against me and my property, and your tacit agreement that you waive all affirmative defenses, and your agreement to compensate me for my time at my reasonable daily rate, labor, costs, and legal fees in prosecuting this private right of action.

Defendants' statement (at PageID #: 114) that "the foreclosure complaint included the debt validation notice" is not what the FAC alleges at ¶ 25. The notice given was *styled* as a "Notice Under the Fair Debt Collection Practices Act," but did not provide the notice *as required* under FDCPA § 1692g(a) (1) and (2). The court can see for itself whether FDCPA § 1692g(a)(1) was satisfied, but that communication is not even alleged as the basis for damages sought in the FAC. (See Defendants' Exhibit, Doc. 10-1, PageID #: 143, 136.)

John Herrera's representation of Plaintiff was denied by the *state* appeal court. Therefore it is incorrect for Defendants to say (PageID #: 115) that "Forgues' state court appellate counsel

was admitted pro hac vice in the First Federal Action" and (PageID #: 116) that "Forgues' counsel failed to attend the appellate mediation and did not respond to the settlement offer."

Also, Plaintiff regrets that she made an inadvertent error at as to March 15, 2016 being the date of the conference, (see PageID # 115; FAC ¶ 35) which she meant to correctly state as November 30, 2015. Forgues did attend that first conference with Judge Gwin without assistance of counsel. If justice requires Defendants to be provided with amendment of the FAC to correct the error, Plaintiff requests leave to so amend.

Defendants argue (PageID #: 117) that the October 23 letter was sent to Forgues as a pro se litigant. But Forgues does not cease to be a federally protected consumer in litigation. The FDCPA doesn't make exception for litigation violations.

## II. LAW AND ARGUMENT

Plaintiff's First Amended Complaint ("FAC") raises a right to relief above the speculative level. Plaintiff's FAC relies on the plain wording of the FDCPA as broad and remedial, and the specific terms as defined by Congress within the Act itself and, where there is ambiguity, the official position published by the Consumer Financial Protection Bureau ("CFPB")[1] on the matter should be given Chevron deference.[2] Thus, the court should apply the FDCPA broadly according to its terms in favor of the consumer, not to protect debt collectors. From Geary v. Green Tree Servicing, LLC, 2:14-cv-00522, S.D.Ohio (2015):

---

[1] "[T]he Consumer Financial Protection Bureau, [] has delegated rulemaking authority under the FDCPA, and the Federal Trade Commission, which shares concurrent authority to enforce the FDCPA with the Bureau. See 15 U.S.C. § 1692l (setting forth administrative enforcement and rulemaking authority under the FDCPA)." Hernandez v. Williams, Zinman & Parham, P.C., No. 14-15672 (9th Cir., 07/20/2016). "Congress vested authority for administering the FDCPA in the CFPB, which is empowered not only to enforce the Act, but also to promulgate regulations and to issue advisory opinions. 15 U.S.C. §§ 1692k(e), 1692l(b)(6), (d); see also 12 U.S.C. § 5512(b)(4)(B) (addressing deference due to CFPB interpretations of federal consumer financial law). Its interpretation of the Act is therefore entitled to deference." Brief of Amici Curiae Consumer Financial Protection Bureau and Federal Trade Commission, Hernandez v. Williams, Zinman & Parham, P.C., 9th Cir., No. 14-15672, Dkt. No. 14, Page 28 of 42, filed 08/20/2014.

[2] See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984).

The Sixth Circuit has determined that, "[t]he Fair Debt Collection Practices Act is an extraordinarily broad statute. Congress addressed itself to what it considered to be a widespread problem, and to remedy that problem it crafted a broad statute." Frey v. Gangwish, 970 F.2d 1516, 1521 (6th Cir. 1992). Because the Court's "actions are guided by the hand of Congress," the Sixth Circuit, as well as other Circuits, have noted that the FDCPA should be applied broadly according to its terms. See, e.g., Bridge v. Ocwen Fed. Bank, FSB, 681 F.3d 355, 362 (6th Cir. 2012).

A.  **Plaintiff concedes that § 1692g(a) claims, *but not § 1692g(b) claims*, against Wallace and Deutsche Bank *would be* barred by the statute of limitations *but for* the Plaintiff's assessment and invoice for damages within one year of the violation.**

Defendants argue that *all* of Forgues' § 1692g claims against Wallace and Deutsche Bank based on the October 23, 2015 letter are barred by the statute of limitations because those two Defendants were added as parties well more than one year later when the FAC was filed on January 5, 2017. See Asher v. Unarco Material Handling, Inc., No. 09-5158 (6th Cir. 3/3/2010). Plaintiff concedes that the § 1692g(a) 15 U.S.C. § Validation Notice claims, *but not the § 1692g(b) claims*, against Wallace and Deutsche Bank would be time-barred except that Plaintiff had mailed Defendants an invoice to enforce liability for that violation within one year, and the invoice stated that notice to agent was notice to principal as far as Wallace and Deutsche Bank should be concerned.

B.  **The First Amended Complaint raises a right to relief under the sole Count (FDCPA) above the speculative level.**

1.  **There is a plausibly pled violation of § 1692g against each and every Defendant.**

The one-year statute of limitations in no way affects the liability imposed on CLL under § 1692g(a), and on each of the three Defendants **under § 1692g(b)** for CLL and Wallace's subsequent failure to either (1) validate the debt or (2) cease collection activity (aka "cease and desist") after receiving the Notice of Dispute (Doc. 5-2, PageID #: 72) sent to the Carpenter Defendants on November 4, 2015. (See FAC, ¶¶ 32-37.)

> a. **A reasonable jury could find that an animating purpose of the October 23, 2015 letter was to induce Ms. Forgues' consent to collection by foreclosure sale, thus making it more likely, triggering the requirements of § 1692g(a).**
>
> > i. **Under the Act, it is not a necessary element of a violation that the letter be an attempt to collect a debt, but only be "in connection with" one, as alleged.**

"The 'animating purposes' of the communication is a question of fact that generally is committed to the discretion of the jurors, not the court," <u>Estep v. Manley Deas Kochalski, LLC</u>, 552 Fed.App'x 502, 505 (6th Cir. 2014). Defendants point out that "the letter was in connection with the state court appeal"—yes, indeed, the appeal *connected with foreclosure* and "typical filings in an appeal initiated by Forgues[.]" It wasn't a car accident case. Defendants' "typical filings" are another step in the foreclosure/ debt collection process and Forgues' resistance by her motion to set aside the judgment[3], her appeal, and her brief and oral argument manifests her lack of consent during multiple disputes against multiple debt collectors. As alleged in the FAC, ¶ 37:

> The letter and Mr. Wallace's oral statements to both Plaintiff and to the Ohio appeals court are communications in connection with the collection of a debt, as defined within 15 U.S.C. § 1692a(2). Under the circumstances present here, a reasonable jury could find that an animating purpose of the letter and statements was to induce Ms. Forgues' consent to collection by foreclosure sale, thus making it more likely. This connection is sufficient to trigger the protections of the FDCPA. Defendants' actions in pursuing foreclosure constituted a step in collecting debt and thus debt collection activity that is regulated by the FDCPA.

Plaintiff objects to Defendants' citation of <u>Goodson</u>[4] (and all others) that use the term "debtor" because it implies that Deutsche Bank is a creditor, which under the FAC it is not. The FDCPA does not use "debtor" but defines and uses the term "consumer" in referring to Ms. Forgues. In this FDCPA enforcement, Plaintiff is expressly the consumer, and creditor, but not a debtor. First, there was no relationship, prior or "whatsoever," between the Carpenter Defendants

---

[3] See FAC, ¶ 56. ("the judgment is a manifestation of consumer debt covered by the FDCPA. See § 1692a(5)")
[4] <u>Goodson v. Bank of America, N.A.</u>, 600 Fed. Appx. 422, 430 (6th Cir. 2015) (not recommended for publication).

and Plaintiff. Defendants' statement to this effect (PageID #: 121) actually *supports Plaintiff's claim*. Defendants' suggestion (PageID #: 122) that the attorney who defends a debt collector when a consumer is enforcing liability is immune when it begins collection efforts against the consumer would impermissibly create an enormous loophole not intended by Congress.

Second, a reasonable jury can find violative intent and purpose of the letter when *considered together with other communications*, as alleged, in favor of Ms. Forgues. (See FAC, ¶¶ 14, 70.)

Third, if the letter was not an attempt to collect a debt, settlement would have meant Deutsche Bank *paying Forgues* to stay in her home. The flow of assets, which the letter even equivocates on, would have been toward Forgues, not to the debt collectors. Under the scenario in the letter, Forgues experiences a sale, and loss.

Fourth, the letter was alleged to be part of a strategy to make collection by foreclosure and sale (liquidation) more likely. Foreclosure is debt collection. (See FAC, ¶ 13.) The terms included with the letter required Forgues to surrender her home. Maybe Ms. Forgues would receive cash "once the property was sold at foreclosure sale." Exactly, liquidation, and all without Deutsche Bank being the creditor.

> In addition, the Act's substantive provisions indicate that debt collection is performed through either "communication," id. § 1692c, "conduct," id. § 1692d, or "means," id. §§ 1692e, 1692f. These broad words suggest a broad view of what the Act considers collection. Nothing in these provisions cabins their applicability to collection efforts not legal in nature. Cf. Heintz v. Jenkins, 514 U.S. 291, 292 (1995) (holding that "a lawyer who 'regularly,' through litigation, tries to collect consumer debts" is a "debt collector" under the Act). Foreclosure's legal nature, therefore, does not prevent if from being debt collection.
>
> Furthermore, in the words of one law dictionary: "To collect a debt or claim is to obtain payment or liquidation of it, either by personal solicitation or legal proceedings." Black's Law Dictionary 263 (6th ed. 1990). The Supreme Court relied on this passage when it declared the following in a case concerning the Act's definition of "debt collector": "In ordinary English, a lawyer who regularly tries to obtain payment of consumer debts through legal proceedings is a lawyer

who regularly 'attempts' to 'collect' those consumer debts." Heintz, 514 U.S. at 294 (emphasis added). Thus, if a purpose of an activity taken in relation to a debt is to "obtain payment" of the debt, the activity is properly considered debt collection. Nothing in this approach prevents mortgage foreclosure activity from constituting debt collection under the Act. See Shapiro & Meinhold v. Zartman, 823 P.2d 120, 124 (Colo. 1992) (explaining that "foreclosure is a method of collecting a debt by acquiring and selling secured property to satisfy a debt"). In fact, every mortgage foreclosure, judicial or otherwise, is undertaken for the very purpose of obtaining payment on the underlying debt, either by persuasion (i.e, forcing a settlement) or compulsion (i.e., obtaining a judgment of foreclosure, selling the home at auction, and applying the proceeds from the sale to pay down the outstanding debt). As one commentator has observed, the existence of redemption rights and the potential for deficiency judgments demonstrate that the purpose of foreclosure is to obtain payment on the underlying home loan. Such remedies would not exist if foreclosure were not undertaken for the purpose of obtaining payment.

Glazer v. Chase Home Fin. LLC, 704 F.3d 453 (6th Cir. 2013).

Fifth, Defendants dispute that they are debt collectors, but do not argue then that they are creditors within the meaning of the FDCPA. See FAC, ¶¶ 48, 51 quoting Bridge v. Ocwen Fed. Bank, FSB, 681 F.3d 355 (6th Cir. 2012) ("For an entity that did not originate the debt in question but acquired it and attempts to collect on it, that entity is either a creditor or a debt collector depending on the default status of the debt at the time it was acquired."). According to Bridge, it's one or the other. Section 1692a(6) provides in relevant part:

The term "debt collector" means any person [1] who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or [2] who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor [3] who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.

(Bracketed enumeration added.) It is alleged beyond the speculative level and more than plausibly pled that each of the Defendants in turn is a debt collector according to the Act and Circuit law. Under the Act, is not necessary for debt collectors to be "regularly involved in debt

collection" even though they are. The court can certainly infer under § 1692a(6) and <u>Bridge</u>, and a reasonable jury could find, that the principal purpose of the business of the letter and "[the use of] any instrumentality of interstate commerce or the mails in any business" was in connection with the foreclosure (collection of any debt). With respect to that alleged activity, the text of § 1692a(6) refers to the principal purpose of "which," not the principal purpose of "whom;" this must refer to the preceding use of "any instrumentality of interstate commerce or the mails in any business." To apply the law otherwise would be the application of an improperly stated rule of law, which would impermissibly narrow the broadness of the term "debt collector." See Sup.Ct. Rule 10. Cf. <u>Paroline v. United States</u>, 134 S. Ct. 1710, 1721 (2014) ("When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all" (quoting <u>Porto Rico Ry., Light & Power Co. v. Mor</u>, 253 U.S. 345, 348 (1920))).

Sixth, under the Act, it is not a necessary element of a violation that the letter be an attempt to collect a debt, but only be "in connection with" one, as alleged (See FAC, ¶¶ 14, 15, 19, 20, 29, 37, 42, 55, 70, 72.) In a published decision, <u>Renee McCray v. Federal Home Loan Mortgage, et al.</u>, 15-1444 (4th Cir. 10/07/2016) the panel stated:

> As we have previously explained, however, "nothing in [the] language [of the FDCPA] requires that a debt collector's misrepresentation [or other violative actions] be made as part of an express demand for payment or even as part of an action designed to induce the debtor to pay." Powell v. Palisades Acquisition XVI, LLC, 782 F.3d 119, 123 (4th Cir. 2014) (second emphasis added). To the contrary, we concluded that, "to be actionable under . . . the FDCPA, a debt collector needs only to have used a prohibited practice 'in connection with the collection of any debt' or in an 'attempt to collect any debt.'" Id. at 124; see also Sayyed v. Wolpoff & Abramson, 485 F.3d 226, 229-34 (4th Cir. 2007); Wilson v. Draper & Goldberg, P.L.L.C., 443 F.3d 373, 375-77 (4th Cir. 2006).
> In Powell, we held that a law firm's filing of an "assignment of judgment" in a debt collection action qualified as a debt collection activity that triggered the protections of the FDCPA. 782 F.3d at 120-21. Similarly, in Sayyed, we held that a motion for summary judgment filed in a debt collection action was "subject to

the provisions of [the] FDCPA." 485 F.3d at 234. And in Wilson, we held that a law firm that provided notice that it was preparing foreclosure papers and that thereafter initiated foreclosure proceedings could be a debt collector as defined by the FDCPA. 443 F.3d at 374-76.

Seventh, Ms. Forgues was in constant threat of scheduling a sale. (See FAC, ¶¶ 34-36.) Mr. Wallace also told John Herrera, in Ms. Forgues' presence, "You know, there is no stay in place," and that there was nothing preventing [them] from scheduling another sale. In this Circuit:

> Court filings can be a threat under the FDCPA. Gionis v. Javitch, Block, Rathbone, LLP, 238 F.App'x 24, 28-29, 30 (6th Cir. 2007); see also Sayyed v. Wolpoff & Abramson, 485 F.3d 226, 229-32 (4th Cir. 2007) (holding that the FDCPA applies to interrogatories and motions for summary judgment); Gearing v. Check Brokerage Corp., 233 F.3d 469, 472-73 (7th Cir. 2000) (holding that the FDCPA applies to a complaint). The fact that the threat appears in a lawsuit or other court filing does not diminish the threatening nature of the communication for purposes of the FDCPA. See Gionis, 238 F.App'x at 29-30. Nor does it matter that the filing is also an "action" because "'attempts' and 'threats' are not necessarily mutually exclusive concepts." Id. at 28-29. In light of the Act's overarching purpose to prevent false, deceptive, or misleading representations, whether a filing's "metaphysical description is more an 'attempt' [to collect a debt] or more a 'threat' is essentially wordplay. No semantical recasting alters the intimidating effect on the least sophisticated consumer: that she would be confused, and reasonably might feel pressured to immediately pay the debt, even if she disputed its validity" in order to avoid the implied consequences of the lien. Id. at 29 (internal quotation marks omitted). "This is so because even if the least sophisticated consumer," or indeed any consumer, "would view [the lien] as an actual 'attempt' to collect [the debt], the attempts would nonetheless embody an ongoing threat" that First Resolution would force the sale of her home or refuse to voluntarily release the lien. Id.

Currier v. First Resolution Investment Corp., 762 F.3d 529, 535 (6th Cir. 2014).

Thus, Defendants' First through Seventh points have no merit. Contrary to what the Defendant's say, **all** of the factors support the conclusion that the October 23, 2015 letter was in connection with the collection of a debt. It is clear from the FAC, and a reasonably jury could find, that the whole reason that the Carpenter Firm (CLL) and its members were retained was a further step in Deutsche Bank's process of foreclosure against the Ms. Forgues, to ultimately

collect on the debt it acquired in default for that purpose. No one forced the Carpenter Defendants to become debt collectors by taking up the case and communicating with the Ohio court. And their continuing activity within the past year after Forgues' proper dispute on November 4, 2016 pursuant to § 1692g(b), which required the Carpenter Defendants to cease and desist, constituted violations of the Act for which they are directly liable and Deutsche Bank is vicariously liable. The assertion (PageID #: 118) that this is "the type of manufactured claims that the Sixth Circuit has criticized" assumes, against the factual allegations in the FAC, that Deutsche Bank is a creditor, which it is not. It certainly does not excuse Defendants' failure to give the required validation notice in the October 23, 2015 letter. Therefore, for that reason, the 30-day window in which to dispute the debt never expired for Plaintiff; Defendants cannot defeat the protections afforded by § 1692g(b) by not giving the notice required by Subsection (a) and at the same time invoke a statute of limitations that commences with such notice.

> ## ii. According to the CFPB and FTC in Hernandez, "Section 1692g(a) unambiguously imposes its notice requirement on "a debt collector," a term that encompasses all debt collectors, whether the first, second, or umpteenth to attempt to collect a particular debt."

Section 1692g(a) provides in relevant part (emphasis added):

> Within five days after the initial communication with a consumer in connection with the collection of any debt, *a* debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice . . .

Defendants whole argument erroneously focuses on the phrase "*the* initial communication"—instead of "*a* debt collector"—based on old cases prior to the CFPB's/FTC's amici brief ("Amici Brief") [5] submitted in Hernandez v. Williams, Zinman & Parham, P.C., No.

---

[5] Brief of Amici Curiae Consumer Financial Protection Bureau and Federal Trade Commission, Hernandez v. Williams, Zinman & Parham, P.C., 9th Cir., No. 14-15672, Dkt. No. 14, filed 08/20/2014.

14-15672 (9th Cir., 07/20/2016), which summarized in pertinent part beginning at Doc. No. 14,

p. 17 of 42:

> Section 1692g(a) requires "a debt collector" to "send the consumer a written notice containing" certain specified information either in "the initial communication" or "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt." **By imposing this requirement on "a debt collector," Congress indicated that each debt collector that attempts to collect a debt from a consumer must provide the required notice. The district court, however, impermissibly narrowed § 1692(a)'s reach to only the first of what is often many debt collectors that handle a particular debt. That narrow interpretation has no basis in the statute's text or purposes.**
>
> A. Section 1692g(a) unambiguously imposes its notice requirement on "a debt collector," a term that encompasses all debt collectors, whether the first, second, or umpteenth to attempt to collect a particular debt. The district court nonetheless held that § 1692g(a) does not apply to subsequent debt collectors because only an initial debt collector sends "the initial communication" that triggers the provision's notice requirement. That was error. The phrase "the initial communication" is most naturally read—and has been read by this Court and Congress—to refer to each debt collector's initial communication with a consumer.
>
> &ast; &ast; &ast;
>
> C. Section 1692g's text and purposes leave no doubt that the provision requires each debt collector, not just the initial debt collector, to send a validation notice in or after its "initial communication" with a consumer. To the extent there remains any ambiguity, however, the Court should defer to the longstanding views of the principal federal agencies charged with implementing and enforcing the FDCPA—that each debt collector that contacts a consumer about a debt must comply with § 1692g.

As a direct result, the Ninth Circuit Court of Appeals, while pointing out that none of its

Sister Circuits has decided this point in a published decision, reasoned as follows:

> The question presented here is whether the phrase "the initial communication" as used in the FDCPA means the first communication from the initial debt collector that tries to collect, or whether it means the first communication a consumer receives from any collector about a debt, including subsequent collectors that communicate about the same debt.
>
> Applying well-established tools of statutory interpretation and construing the language in § 1692g(a) in light of the context and purpose of the FDCPA, we hold that the phrase "the initial communication" refers to the first communication sent by any debt collector, including collectors that contact the debtor after another collector already did. In other words, if there are multiple debt collectors that try

11

to collect a debt, each one must send the required notice after its first communication with the alleged debtor about the debt.

* * *

[This is] consistent with the FDCPA's broad imposition of requirements on all debt collectors throughout the lifecycle of a debt . . . restricting the validation notice requirement to the initial debt collector produces a loophole that would, in practice, undermine consumers' efforts to verify their debts and Congress's mandate that collection efforts halt until verification occurs.

Hernandez.

Therefore, Defendants' argument that "CLL and Wallace, as alleged subsequent debt collectors, were not required to provide a second debt validation notice when they entered an appearance in Forgues' appeal because the debt validation notice had already been provided" is incorrect as a matter of what the law has always been and has no merit. Reimer's initial notice (FAC, ¶ 25), whether or not in the form of a formal pleading, cannot serve as the initial communication for the Carpenter Defendants (CLL and Wallace) who are alleged to be subsequent debt collectors, as here. (FAC, ¶ 27-30.) In their Amici Brief, at page 33 of 42, the CFPB and FTC jointly explained that:

[A]pplying § 1692g only to initial debt collectors would create a loophole that could strip consumers of their ability to stop attempts to collect debts they do not owe. The FDCPA bars a debt collector that receives a dispute under § 1692g(b) from continuing to attempt to collect the disputed debt until the debt is verified. 15 U.S.C. § 1692g(b). But courts have held that a debt collector has no affirmative obligation to verify the debt in response to the consumer's dispute so long as it halts its collection efforts. See, e.g., Shimek v. Weissman, Nowack, Curry & Wilco, P.C., 374 F.3d 1011, 1014 (11th Cir. 2004); Smith v. Transworld Sys., Inc., 953 F.2d 1025, 1031-32 (6th Cir. 1992). And nothing in the FDCPA prevents a creditor from enlisting a second debt collector to collect a disputed debt without verifying it first. If § 1692g did not apply to subsequent debt collectors, the new debt collector would have no obligation to verify the debt under § 1692g(b) and could pursue collection unhindered—even though no one ever responded to the consumer's dispute.

That's what happened here. The Amici Brief states at p. 11 of 42:

Exempting subsequent debt collectors from § 1692g would also create a loophole that could nullify § 1692g's debt-validation protection altogether. When

12

a consumer disputes a debt with an initial debt collector, nothing in the FDCPA prevents the creditor from simply passing the debt to a second debt collector to collect, even where no one has verified the debt. If the second debt collector had no independent obligation to send consumers a validation notice, consumers would be unable to stop attempts to collect disputed, unverified debts—the precise problem that Congress designed § 1692g to prevent.

In return, the Ninth Circuit stated:

> But nothing in the statute prevents the debt collector from passing the debt on to a subsequent debt collector in lieu of responding to the verification demand. This is so because § 1692g(b) gives a debt collector a choice upon receiving a request for validation: "the collector 'may provide the requested validations and continue [its] debt collection activities, or it may cease all collection activities.'" Guerrero v. RJM Acquisitions LLC, 499 F.3d 926, 940 (9th Cir. 2007) (per curiam) (alteration omitted) (quoting Jang v. A.M. Miller & Assocs., 122 F.3d 480, 483 (7th Cir. 1997)). If a debt collector determined that collecting on a debt was "not worth the effort, "the collector would be at liberty to "sell the account." Id. And if the collector did sell the debt, the debt collector that purchased it, on WZP's reading, would be permitted to collect free from § 1692g's strictures, and the consumer would be effectively unable to obtain the information necessary to verify or dispute her debt. Such a loophole would render § 1692g almost a nullity, and we therefore decline to endorse WZP's interpretation. See N.Y. State Dep't of Soc. Servs. v. Dublino, 413 U.S. 405, 419–20 (1973) ("We cannot interpret federal statutes to negate their own stated purposes.").

Hernandez. So, Defendants could have simply passed on the debt to a subsequent debt collector in lieu of either (1) collecting or (2) responding per § 1692(b). Defendants continued collection activity, in violation of the Act. Notice that the Ninth Circuit followed the CFPB/FTC (p. 33 of 42), in pointing out that nothing in the FDCPA prevents a "debt collector"—not "creditor"— from passing on the debt. That admits that Deutsche Bank, a debt collector *itself*, as here, can pass on a debt to another debt collector.

Plaintiff requests the Court take judicial notice of the Amici Brief with Chevron deference, and consider the resulting decision of the Ninth Circuit in Hernandez as persuasive. Defendants' argument relies on old cases, which cannot be persuasive any longer because it ignores the CFPB's and FTC's official interpretation of the Act which warrants deference.

### b. Defendants' argument that they were not required by § 1692g(b) to cease collection or validate the debt also fails for the reasons set forth by the CFPB and FTC in <u>Hernandez</u>.

Because the October 23, 2015 letter also was an initial communication, specific claims of failure to either respond to Plaintiff's November 4, 2015 Notice of Dispute—by continuing collection activity, filing appellee brief, oral argument and statements without validating the debt with the name of the **<u>creditor</u>** to whom the debt is owed—accrued after the communication, and certainly on or after January 4, 2016 for Wallace and Deutsche Bank pending validation is thus not barred by any statute of limitations. As for statements specifically alleged to have been made by Wallace at the November 30, 2015 conference with Judge Gwin accrued to CLL on that day and were included in the original complaint. Defendants meritless argument, based on misconceptions and an old 2013 case (Lee, 520 Fed. Appx. at 650-51), that they were not required to cease collection or validate the debt, shows in light of <u>Hernandez</u> supra why this consumer must challenge these Defendant debt collectors for their statutory violation. Defendants' error of law is not an excuse for their conduct.

### 2. Congress made no exception in § 1692c(b) for any court in the specific list of persons excepted from the phrase "any person" regarding prohibited communications with third parties.

15 U.S.C. § 1692c(b) provides:

> (b) Communication with third parties
> Except as provided in section 804, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than a consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

Section 1692c(b) **_specifically_** lists the persons excepted from the phrase "any person" regarding prohibited communications with third parties. Congress did not make any exception in

that list for any court. Congress knows how to write exceptions in the Act[6], and did not do so here. Defendants argue that courts have held that "it is unlikely that the term 'third party' was meant to include a court, given the context and the statute's purpose." (PageID # 127). In support of their untenable position, Defendants' cite to an outlier district court case (E.D. Pa.) that manifestly failed to give effect to, and impermissibly narrowed, the extraordinarily broad terms of statute without any finding that the statute was ambiguous. A reasonable trier of fact could find that Deutsche Bank's appellee brief, filed in response to Forgues' appellant brief, when considered together with all the Defendants' communications, was part of the strategy to make payment by liquidation more likely. See FAC, ¶¶ 14, 37, 70.

Under § 1692c(b), it was not reasonably necessary to communicate with the Ohio court without Deutsche Bank being the creditor to whom the debt is owed. For Defendants to argue that Forgues filed the appeal and "thus necessarily consented to [Defendants'] 'communications' to the state appellate court" is laughable and without merit. CLL and Wallace had a choice of whether to file a notice of appearance and file further communications. The court did not require them or give express permission.

> **3. The absence of any communication under § 1692c(c)(1) "to advise the consumer that the debt collector's further efforts are being terminated" was part of the debt collectors' plan to keep collecting anyway without disclosing the name of the creditor essential to validation of the debt, § 1692g(a)(2).**

Plaintiff concedes that her First Amended Complaint does not allege any communication that violates her June 8, 2016 request to *cease communications (with the consumer)* except as authorized under § 1692c(c)(1). However Defendants were already supposed to have ceased

---

[6] See <u>Stratton v. Portfolio Recovery Assocs., LLC</u>, 770 F.3d 443 (6th Cir. 10/24/2014) ([A]fter Heintz, Congress amended section 1692e to "expressly exempt[] formal pleadings from a sole, particularized requirement of the FDCPA: the requirement that all communications state that they come from a debt collector." <u>Sayyed v. Wolpoff & Abramson</u>, 485 F.3d 226, 231 (4th Cir. 2007).)

collection actions simply from receiving the November 4, 2015 Notice of Default, Exhibit B. This absence of any communication under § 1692c(c)(1) "to advise the consumer that the debt collector's further efforts are being terminated" instead of, say, transferring the debt to another as the CFPB/FTC outlined to the Ninth Circuit, was part of the debt collectors' plan to keep collecting anyway without disclosing the name of the creditor essential to validation of the debt, § 1692g(a)(2).

> **4. Because CLL's initial communication did not (and could not) disclose the name of the creditor to whom the debt is owed as § 1692g requires, each of Defendants' communications "within the past year" are a use of materially false, deceptive, or misleading representation or means in connection with the collection of any debt under § 1692e.**

As set forth in the FAC, ¶¶ 15-20, Congress requires a **creditor** at the threshold of consumer debt collection activity. The Fair Debt Collection Practices Act ("FDCPA"), provides in relevant part:

> § 1692g. Validation of debts [Section 809 of Pub. Law]
> (a) Notice of debt; contents—Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
> **(2) the name of the creditor *to whom the debt is owed*;**

15 U.S.C. § 1692g(a)(2) (emphasis added).

The clear and unambiguous language of § 1692g(a)(2) requires "the name of the creditor to whom the debt is owed" be provided by each debt collector to the consumer subsequent to the initial communication unless contained in the initial communication. Congress defines "creditor" in the FDCPA itself:

> The term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, **but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.**

15 U.S.C. § 1692a(4) (emphasis added).

The Act excludes Deutsche Bank and each of the Defendants from the definition of "creditor" because they are persons that received an assignment or transfer of an alleged debt in default solely for the purpose of facilitating collection of such debt for another, or stand in the shoes of such person; with respect to the debt, they are debt collectors without a creditor.

A violation of § 1692g(a) is automatically a violation of § 1692e because it is a use of materially false, deceptive, or misleading representation or means in connection with the collection of any debt.

15 U.S.C. § 1692e broadly provides in relevant part:

> § 807. False or misleading representations
> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

In Janetos v. Fulton Friedman & Gullace, LLP, 15-1859 (7th Cir. 2016), Plaintiffs brought suit alleging that defendant had violated §§ 1692e, 1692e(10), and 1692g(a)(2) of the Act by failing to disclose the current creditor's name:

> Portions of § 1692e are drafted in broad terms, prohibiting the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." For such claims, we must assess allegedly false or misleading statements to determine whether they could have any practical impact on a consumer's rights or decision-making process-that is, whether they represent the kind of conduct the Act was intended to eliminate.
> For § 1692g(a)(2), however, that decision has been made for us. In enacting § 1692g(a)(2), Congress determined that a debt collector must include in its § 1692g(a) notice "the name of the creditor to whom the debt is owed." With that specific disclosure requirement, Congress decided that the failure to make the disclosure is a failure the Act is meant to penalize. The undisputed facts show such a failure here. Since § 1692g(a)(2) clearly requires the disclosure, we decline to offer debt collectors a free pass to violate that provision on the theory that the disclosure Congress required is not important enough.

Incredibly, Defendants argue at great length (PageID #: 129-132) that the court should give the statutorily defined term "creditor" its ordinary meaning. They cite to F.T.C. v. Check

Inv'rs, Inc., 502 F.3d 159, 173 (3d Cir. 2007) in which that Court admitted that focusing on the status of the debt when it was acquired overlooks the fact that the person engaging in the collection activity may actually be owed the debt and is, therefore, "at least nominally" a creditor. Plaintiff draws the court's attention to the rest of the citation (emphasis added):

> Admittedly, focusing on the status of the debt when it was acquired overlooks the fact that the person engaging in the collection activity may actually be owed the debt and is, therefore, at least nominally a creditor. **Nevertheless, pursuant to § 1692a, Congress has unambiguously directed our focus to the time the debt was acquired in determining whether one is acting as a creditor or debt collector under the FDCPA.**

Ibid. Defendants' argument is insufficient and without any merit. As alleged at FAC, ¶ 31:

> Defendants knew or should have known that Deutsche Bank is not the creditor to whom Plaintiffs debt is owed. **Congress unambiguously requires Deutsche Bank be "the creditor" in order for Defendants to even send Plaintiff an initial communication in compliance with 15 U.S.C. § 1692g(a).** To this day, none of the Defendants' communications to Plaintiff and third parties have ever contained that most basic, material element required of a debt collector to show that the debt is valid.

(Emphasis added.)

Congress chose to use the defined term "creditor" in § 1692g(a)(2) and not "person" which is used elsewhere. This Court must decline to render a provision of the FDCPA inoperable. "It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" TRW, Inc. v. Andrews, 534 U.S. 19, 31 (2001) quoting Duncan v. Walker, 533 U.S. 167, 174 (2001).

Plaintiff never alleged or argued that if a debt is sold after it is in default, the debt is extinguished and becomes uncollectable under the FDCPA. But, according to the CFPB's and FTC's joint amici brief in Hernandez, a debt collector in that predicament is not prevented from selling it. Perhaps offering it to the consumer herself without threat or coercion might be an

example of a communication not in connection with *collection* of any debt. Perhaps that is what Congress intended.

Then, in arrogant fashion and a bizarre sense of license under the Act, Defendants suggest (PageID #: 130-132) that because a least sophisticated consumer would not know to distinguish between a creditor in the ordinary sense of the word and the different meaning Congress gives the term—and therefore would know of no reason to question it—there's no abuse because the consumer doesn't even know how she is being abused. This is wrong and this Court can help fix it. See Janetos, supra. ("With that specific disclosure requirement, Congress decided that the failure to make the disclosure is a failure the Act is meant to penalize.")

The Plaintiff, in her FAC, alleges facts upon which this Court can infer that Deutsche Bank is by definition a debt collector and not a creditor, and plausibly not "the creditor to whom the debt is owed." Defendants suggest an alternate theory with no law or facts that doesn't run afoul of the Act, that Deutsche Bank is a creditor because a least sophisticated consumer would falsely believe that it is. And, citing Jacobson v. Healthcare Financial Services, Inc., 434 F.Supp.2d 133, 138 (**E.D.N.Y. 2006**), the abuser blames the victim, Ms. Forgues, as being a "professional plaintiff." This is Defendants' strenuous but meritless attempt to point this Court away from the terms of the Act, and their violation and resulting liability under it. When reviewed by the Second Circuit, Jacobson was vindicated, and his suit, as here, is exactly what Congress intended. See S. Rep. No. 95-382 p.5; Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 91 (**2d Cir. 2008**) ("The FDCPA enlists the efforts of sophisticated consumers ... as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others."). District Judge Glasser's criticism of

Jacobson in the district court that Defendants' cite to justify their position was, in the end, not affirmed by the Second Circuit panel, which vacated the award of costs and attorneys' fees to the defendant. The panel stated:

> In justifying the award, Judge Glasser relied on Jacobson's acknowledgment that the underlying debt was valid, and his admission that he did not feel "harassed, threatened or misled by the letter." 434 F. Supp. 2d at 141. These facts are irrelevant to the question of whether Jacobson brought the action "in bad faith and for the purpose of harassment," and it was legally erroneous for the district court to base its conclusion on them. As explained above, by providing for statutory damages and attorneys fees for successful plaintiffs, the FDCPA permits and encourages parties who have suffered no loss to bring civil actions for statutory violations. Jacobson's subjective reaction to the letter, therefore, is neither here nor there.
>
> The district court also based its award on the conclusion that Jacobson "knew that his claim was meritless." Id. Since we have found that Jacobson's third argument was in fact meritorious, this basis for granting costs and fees was necessarily erroneous.

## CONCLUSION

For the foregoing reasons, the Plaintiff has come forward with sufficient factual allegations, taken in the light most favorable to her, such that a reasonable jury could return a verdict for Plaintiff against each Defendant, and the Defendant's motion to dismiss the sole Count in First Amended Complaint for violation of the FDCPA should be denied. Plaintiff also requests the Court grant leave to further amend her complaint to correct the date of the November 30, 2015 conference if and as justice requires.

Respectfully submitted,

Christine J. Forgues

## **PAGE LIMIT CERTIFICATION**

I certify pursuant to Local Rule 7.1(f) that this action is not yet assigned a track and the length of memoranda does not exceed 20 pages.

Christine J. Forgues

## **CERTIFICATE OF SERVICE**

I certify that the foregoing <u>Plaintiff Christine J. Forgues' Opposition To Defendants'</u>

<u>Motion To Dismiss Plaintiff's First Amended Complaint</u> was filed by mail on Wednesday,

March 22, 2017. The parties may access this filing through the Court's ECF system.

Christine J. Forgues