**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTINE J. FORGUES, | ) | CASE NO. 1:16CV02576 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| CARPENTER LIPPS & LELAND LLP, et al, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |

This matter comes before the undersigned on referral for report and recommendation. Pending before the Court is Defendants Carpenter Lipps & Leland LLP (hereinafter "CLL"), David A. Wallace, and Deutsche Bank's motion to dismiss Plaintiff Christine J. Forgues' First Amended Complaint.  (Doc. No. 10).  Plaintiff has filed a response in opposition, and Defendants have filed a reply.  (Doc. No. 11, 13).  For the reasons that follow, it is recommended that Defendant's motion be GRANTED.

**I. Background**

On March 23, 2007, Plaintiff and her late husband borrowed $144,000 from Chase Bank USA, N.A.  (Doc No. 5 (hereinafter "FAC") at ¶11). On May 14, 2010, Chase Bank assigned the mortgage to Deutsche Bank National Trust Company, as Trustee for J.P Morgan Mortgage Acquisition Trust 2007-CH5, Asset Backed Pass-Through Certificates, Series 2007-CH5

(hereinafter "Deutsche Bank").  (FAC, ¶43).  On March 29, 2012, after Plaintiff defaulted on the loan, Deutsche Bank filed a state court foreclosure action.  (FAC ¶25; Doc. No. 10-1).  On April 25, 2013, the state court entered default judgment in favor of Deutsche Bank, which Plaintiff did not appeal.[1]  (Doc. No. 10-2).  A number of foreclosure sales were scheduled, but Deutsche Bank withdrew them.  (Doc. No. 10-3).  On June 1, 2013, Select Portfolio Servicing, Inc., took over servicing of the loan.  (Doc. No. 5-5 at 2).  Two years later, on June 30, 2015, Plaintiff filed a motion to set aside default judgment, arguing that she had rescinded mortgage loan on January 7, 2010.  (Doc. No. 10-4 at 4).  The motion was denied on September 11, 2015.

On August 19, 2015, while Plaintiff's motion to set aside default judgment was pending in state court, she filed a *pro se* complaint against the loan servicer, SPS, in the Northern District of Ohio, which raised claims under the Fair Debt Collection Practices Act ("FDCPA") and the Fair Credit Reporting Act ("FCRA").  *Forgues v. SPS*, Case No. 1:15cv01670 (hereinafter "First Federal Action").  The claims were brought in relation to the debt at issue in the state court foreclosure case.  *Id.*  David Wallace and the law firm of Carpenter Lipps & Leland LLP (who are named defendants in the instant case) appeared as counsel for SPS in the First Federal Action.  *Id.*

On September 23, 2015, Plaintiff contacted Carpenter and Wallace about settling the First Federal Action.  (FAC at ¶23).  In her email, Plaintiff wrote:

\*\*\*

In reference to case number 1:15-cv-01670 Forgues v. SPS

---

[1] This court may consider public records without converting a Rule 12(b)(6) motion into a Rule 56 motion.  *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir.1997).

2

> Mr Wallace,
>
> I understand you have requested an extension of time to prepare the response to my pleading. If your client is inclined to consider alternatives, I would be open to discussions that would allow us the opportunity to resolve this situation informally, by means of an adequate compensatory settlement.
>
> I have devoted many resources to the preparation of this suit. If further filings are required, any future discussions would need to reflect the increased investment of those resources.
>
> \     Please contact me to discuss whether you desire to resolve this matter privately, and without resort to further litigation. If I do not hear from you by October 1, 2015, I will presume we are to proceed with litigation.
>
> Regards
>
> Christine Forgues, Plaintiff

(FAC at ¶23).

On October 5, 2015, SPS filed a motion to dismiss all claims in the First Federal Action, and, on October 9, Ms. Forgues appealed the state court's September 11, 2015 denial of her motion to set aside judgment in the foreclosure case. (First Federal Action, Doc. No. 8; Doc. No. 10-4). On October 23, 2015, Mr. Wallace and CLL entered an appearance in the Eighth District Court of Appeals on behalf of Defendant Deutsche Bank. The same day, Mr. Wallace sent a letter to Ms. Forgues notifying her that his firm was representing the bank in the state court appeal and that his clients were willing to discuss settlement. (Doc. No. 5-1 at 1, Exhibit A to Plaintiff's FAC). Mr. Wallace's letter states, in pertinent part:

> We represent Select Portfolio Servicing, Inc. ("SPS") in the referenced federal case, and Deutsche Bank National Trust Company, as Trustee for J.P. Morgan Mortgage Acquisition Trust 2007-CH5, Asset Backed Pass-Through Certificates Series 2007-CHS in the referenced state court foreclosure action. We understand that back in August 2015 you had some discussions with SPS regarding a resolution of your dispute with SPS and the Bank. SPS sent you the paperwork for consideration for a cash-for-keys settlement.

3

> A copy of that correspondence is enclosed. Please contact me to discuss whether you are still be interested in a resolution of both cases along those lines.
>
> Also enclosed is your service copy of the Notice of Appearance of Counsel that we filed with the Eighth District Court of Appeals.
>
> We look forward to hearing from you.

(Doc. No. 5-1 at 1, Exhibit A to Plaintiff's FAC).

On November 4, 2015, Plaintiff responded to Mr. Wallace's letter with a Consumer Notice of Dispute, which disputed her entire debt and notified Defendants of her intent to sue. (Doc. 5-2 at 1, Exhibit B to Plaintiff's FAC). Plaintiff demanded that Mr. Wallace and CLL validate the debt and provide *inter alia* a full accounting of the loan including the name of the original creditor. (*Id.* at 3). According to Plaintiff's complaint, Defendants never provided the information she requested. (FAC at ¶32). Instead, she maintains, Defendants continued with litigation. *Id.*

On December 8, 2015, the district court granted in part and denied in part SPS's motion to dismiss in the First Federal Action. (First Federal Action, Doc No. 21). Ms. Forgues thereafter retained counsel. (First Federal Action: Doc. No. 29, non-doc order 2/2/16). On March 14, 2016, SPS moved for summary judgment on Ms. Forgues remaining claims. (First Federal Action, Doc. No. 43). The following day, on March 15, 2016, Judge Gwin held an in-person status conference, during which Mr. Wallace allegedly told Plaintiff, "the sale is to go forward. We have directed our people to move that ahead. There is no date set yet. The notice of sale is or will be filed. The sale will be completed before summer or early summer." (FAC ¶35). On April 20, 2016, the court entered an order granting SPS's motion for summary judgment. (First Federal Action, Doc. No. 62). Forgues appealed this decision with the Sixth

4

Circuit.  (First Federal Action, Doc. No. 64).  The decision was affirmed on May 30, 2017.  (First Federal Action, Doc. No. 67).

On June 8, 2016, Plaintiff mailed Wallace and CLL a cease and desist letter and an invoice demanding $85,000 in damages.  (FAC, ¶38; Exhibit C to Plaintiff's FAC). On June 9, 2016, the state court of appeals held oral argument on Plaintiff's appeal of the trial court's denial of Plaintiff's Rule 60(b) motion to set aside judgment.  (FAC at ¶36).  Plaintiff alleges that after oral arguments she was approached by Mr. Wallace who told her, "you know this isn't going to go in your favor.  The house will still be sold.  You may want to consider putting this all behind you and moving on with your life.  Did [your lawyer] mention to you that we made an offer to settle? It isn't as much as we offered before, but we know you have a weaker position now.  It might help you to get a fresh start.  You should think about it."  (FAC at ¶36).  On September 12, 2016, Plaintiff sent Wallace and CLL another invoice, assessing her damages at $185,000.  (FAC ¶39).

Forgues filed this instant matter on October 21, 2016, naming, but not serving, CLL as a defendant.  (Doc. No. 1).  On January 5,2017, Ms. Forgues filed the First Amended Complaint adding Mr. Wallace and Deutsche Bank as defendants.  All defendants have been served with the First Amended Complaint.  Plaintiff alleges five violations of the FDCPA.

First, Plaintiff alleges that Mr. Wallace's October 23, 2015 letter was the initial communication in connection with the collection of a debt under the FDCPA, and the failure to validate the debt in the letter or within five days thereafter violated 15 U.S.C. § 1692g(a). (FAC, ¶¶ 59-66).

5

Second, Forgues alleges that she sent Defendants a notice of dispute and Defendants' failure thereafter to validate the debt or cease collection activities violated 15 U.S.C. § 1692g(b). (FAC, ¶ 67).

Third, Forgues alleges that Defendants' filing of a notice of appearance and the appellate brief with the state appellate court were communications about the debt to a third party that violated 15 U.S.C. § 1692c(b). (FAC ¶ 68).

Fourth, Forgues alleges that these same acts were the pursuit of collection activities after a cease a desist request that violated 15 U.S.C. § 1692c(c).  (FAC ¶ 69).

Fifth, Forgues alleges that by referring to Deutsche Bank as a creditor, Defendants made false and misleading communications in violation of § 1692e because by the terms of the FDCPA no creditor exists in this case.  (FAC ¶ 70).

Defendants' motion to dismiss the First Amended Complaint is now ripe for disposition.

## II. Standard of Review

In deciding a motion to dismiss pursuant to Rule 12(b)(6), or a motion for judgment on the pleadings under Rule 12(c), the Court must take all well-pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give

rise to an entitlement to relief." *Id.* at 679. The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In other words, claims set forth in a complaint must be plausible, rather than conceivable. *Id.* at 570. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). The factual allegations in the complaint "must contain something more...than... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, p. 235-236 (3d ed. 2004)). In addition to reviewing the claims set forth in the complaint, a court may also consider exhibits, public records, and items appearing in the record of the case as long as the items are referenced in the complaint and are central to the claims contained therein. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *Erie County, Ohio v. Morton Salt, Inc.*, 702 F.3d 860, 863 (6th Cir. 2012).

### III. Law and Argument

    **A.**    **Plaintiff's claims under § 1692g**

Plaintiff alleges violations of § 1692g(a) & (b). Section 1692g(a) provides a consumer with the opportunity to dispute a debt, requiring that a notice of debt be sent within five days of "the initial communication with a consumer in connection with the collection of any debt." 15 U.S.C. § 1692g(a). Here, Plaintiff alleges that Mr. Wallace's October 23, 2015 letter was the initial communication in connection with the collection of a debt under the FDCPA, and Defendants failure to validate the debt either in the letter or within five days thereafter violated

7

15 U.S.C. § 1692g(a). (FAC, ¶¶ 59-66). Plaintiff also alleges a violation of §1692g(b). Under § 1692g(b), a consumer may dispute a debt within 30 days after receipt of the initial communication, and the debt collector must cease debt collection activity until it has properly validated the debt. In this case, Plaintiff maintains that Defendants failed to validate the debt or cease collection activities after she sent Defendants a notice of dispute. (FAC, ¶ 67).

    **1.  Whether the § 1692g claims against Wallace and Deutsche Bank are time barred**

  First, Defendants argue that both claims under § 1692g are time-barred with respect to Defendants Mr. Wallace and Deutsche Bank. (Doc. No. 10 at 7). An FDCPA plaintiff must file her claim within one year from the date on which the alleged violation occurs. 15 U.S.C. § 1692k(d). In this case, Plaintiff claims that the initial communication under § 1692g(a) was sent on October 23, 2013. (FAC, ¶¶ 59-66). Thus, Plaintiff maintains, Defendants were required to, but did not, send the debt validation notice by October 28, 2015. Plaintiff's § 1692g claims accrued on that date, and she accordingly had until October 28, 2016 to file her claims.

  Plaintiff's § 1692g claims are time-barred since Plaintiff did not assert them against Wallace and Deutsche Bank until her First Amended Complaint was filed on January 5, 2017, which is outside the limitations period. (Doc. No. 5). Further, the Court agrees with Defendants that the relation-back doctrine does not save these claims. Under Fed. R. Civ. P. 15(c), an amendment to a complaint may relate back to the original complaint for limitations purposes. "However, the precedent of this circuit clearly holds that 'an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations.'" *In re Kent Holland Die Casting & Plating, Inc.*, 928 F.2d 1448, 1449 (6th Cir.

8

1991) (quoting *Marlowe v. Fisher Body*, 489 F.2d 1057, 1064 (6th Cir.1973)). Therefore, in this case, Plaintiff's claims against Wallace and Deutsche Bank are time-barred.

Plaintiff concedes that her claim under § 1692g(a) is time-barred, but she maintains that her claim under § 1692g(b) is not. (Doc. No. 11 at 4). The reason, she says, is that she mailed Defendants an invoice to enforce liability within one year of the alleged violation. *Id.* Plaintiff provides no legal basis for this contention, and the Court rejects it. In sum, Plaintiff's § 1692g claims are time barred with respect to Wallace and Deutsche Bank.

### 2. Whether the sending of the October 23, 2016 letter amounts to conduct taken in connection with the collection of a debt

Defendants also contend, assuming Plaintiff's claims were timely, that neither § 1692g claim is plausible because the sending of the October 23 letter does not amount to conduct taken "in connection with the collection of a debt" under the statute. (Doc. No. 10 at 9-12). As such, Defendant maintains, the §1692g requirements to provide a notice of debt, to validate the debt, and to cease collections activity were never triggered. The Court agrees.

Under the FDCPA, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. "[T]o be actionable, a communication need not itself be a collection attempt; it need only be 'connect[ed]' with one." *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011). However, it is equally clear that "'the statute does not apply to every communication between a debt collector and a debtor.'" *Id.* (quoting *Gburek v. Litton Loan Serv. LP*, 614 F.3d 380, 385 (7th Cir.2010)).

9

For a communication to be considered "in connection with the collection of a debt, "an animating purpose of the communication must be to induce payment from the debtor." *Grden,* 643 F.3d at 173. The "animating purposes" of the communication is a question of fact that generally is committed to the discretion of the jurors, not the court. *Id.* Because this case comes before the Court on a motion to dismiss, Defendant's actual purpose for sending the letter need not be determined. *See Estep v. Manley Deas Kochalski, LLC*, 552 F. App'x 502, 505 (6th Cir. 2014). Rather, the issue is whether it is plausible, based on the facts alleged in the complaint, that one of the purposes animating Defendants' decision to send the letter was to induce payment by Plaintiff. *See Iqbal*, 556 U.S. at 678-79.

In order to determine whether the complaint presents a plausible claim that the animating purpose of the letter was to induce payment, the Court considers the following factors: (1) the nature of the relationship of the parties; (2) whether the communication expressly demanded payment or stated a balance due; (3) whether it was sent in response to an inquiry or request by the debtor; (4) whether the statements were part of a strategy to make payment more likely; (5) whether the communication was from a debt collector; (6) whether it stated that it was an attempt to collect a debt; and (7) whether it threatened consequences should the debtor fail to pay. *Goodson v. Bank of Am., N.A.*, 600 F. App'x 422, 431 (6th Cir. 2015).

Viewing the allegations contained in Plaintiff's complaint in light of the above factors, the Court finds that Plaintiff has not stated a plausible claim that the animating purpose of the October 23, 2015 letter was to induce payment. The letter did not indicate that it was an attempt to collect a debt, and it did not expressly demand payment. (See Doc. 5-1 at 2-5, Exhibit A to Plaintiff's FAC). While Ms. Forgues claims she was under constant threat of a foreclosure sale,

the letter contained no such threat. *Id.* The letter did not reference Ms. Forgues' debt at all. *Id.* The purpose of Mr. Wallace's letter, by its own stated terms, was two-fold. First, Mr. Wallace's letter addressed the potential for resolution of the First Federal Action and the pending state court appeal. (See Doc. 5-1 at 2, Exhibit A to Plaintiff's FAC). Mr. Wallace indicated that SPS previously made a settlement offer. *Id.* That offer, as described in a document attached to the letter, promised Ms. Forgues $3000 in exchange for, *inter alia*, a full release of all claims and, upon sale of the property, relinquishment of her possession of the foreclosed property. (See Doc. 5-1 at 2-3, Exhibit A to Plaintiff's FAC). The October 2015 letter extended the same offer once again, and, thus, rather than demanding payment of Ms. Forgues, the letter contemplated a payment to Ms. Forgues. *Id.*

Importantly, this was not an unsolicited offer. As stated in Plaintiff's complaint, Mr. Wallace's letter was a response to an email communication sent by Ms. Forgues on September 23, 2015. (FAC, ¶24). In that email, Ms. Forgues expressed an interest in settlement and sought a response from Defendants no later than October 1, 2015. (FAC, ¶23). Plaintiff's First Amended Complaint acknowledges that the October 23, 2015 letter was a response, albeit an untimely one, to her email. (FAC, ¶23). The fact that Defendants were responding to Plaintiff's overtures for settlement shows the letter was not an attempt to collect a debt.

Further, the Court disagrees with Plaintiff that Deutsche Bank's offer amounted to a strategy to induce her to give up possession of the home. Plaintiff maintains that payment was made more likely because she was being threatened with losing her home. The Court rejects this interpretation of the letter. At least with respect to her possessory rights, acceptance of the offer would not have required Plaintiff to do anything that she was not already legally bound to do. At

11

the time the letter was sent, Deutsche Bank already had the authority to sell the home since a foreclosure judgment had been entered in the bank's favor. Whether or not she accepted the offer, once the home was sold, Ms. Forgues would have lost her right of possession. Thus, the offer created no greater inducement to pay than that which already existed.

The second stated purpose of the letter was to provide a service copy of the Notice of Appearance of Counsel that Wallace and CLL had filed in the state court of appeals. (See Doc. 5-1 at 2, Exhibit A to Plaintiff's FAC). The filing of the notice of appearance came in response to Plaintiff's decision to appeal the trial court's denial of Ms. Forgues' Rule 60(b) motion to set aside judgment. These facts support the conclusion that the letter was not an attempt to induce Ms. Forgues to pay her alleged debt.

The relationship of the parties at that time also shows the letter was not meant to induce payment. As Plaintiff concedes, Mr. Wallace and CLL had no debt collection relationship with Ms. Forgues. (Doc. No. Rather, they represented SPS in the First Federal Action, which was initiated by Ms. Forgues, and they represented Deutsche Bank in the appeal taken by Ms. Forgues, which challenged the state court's denial of her motion to set aside foreclosure judgment. Notably, as stated in Plaintiff's complaint, in foreclosure proceedings at the trial level, Deutsche Bank was represented by the Reimer Law Firm, and not by Mr. Wallace or CLL. Thus, neither Mr. Wallace nor CLL had any prior debt collection relationship with Ms. Forgues. Deutsche Bank did, of course, have a prior debt collection relationship with her, but, by the time the letter was sent, a foreclosure judgment had already been entered in Deutsche Bank's favor and against Ms. Forgues. Overall, the relationship of the parties at the time that the letter was sent shows that the animating purpose of the letter was not to induce payment.

12

The Court concludes, therefore, that, on balance, the above factors weigh toward a conclusion that the October 23, 2015 letter was not a communication sent in connection with collection of a debt.

### 3. Defendants' additional arguments with respect to Plaintiff's claims under § 1692g

Defendants also maintain that Plaintiff's § 1692g(a) claim is not plausible because the October 23, 2015 letter was not "the initial communication" made in connection with the collection of any debt. Defendants point out that based on the unpublished opinions of the Third and Tenth Circuit, § 1692g does not require additional validation notice where "requisite validation notice regarding the same debt had already been issued in the foreclosure complaint." *See Oppong v. First Union Mortg. Corp.*, 326 Fed. Appx. 663, 665-66 (3d Cir. 2009); *Lee v. Cohen, McNeile & Pappas, P.C.*, 520 Fed. Appx. 649, 650-51 (10th Cir. 2013). Thus, Defendants argue, a subsequent debt collector is not obligated to provide debt validation.

Here, the First Amended Complaint contains the allegation that during foreclosure proceedings, which were initiated March 29, 2012, counsel had provided Plaintiff with a Notice Under the Fair Debt Collection Practices Act. (FAC ¶25). Defendants argue that this Notice was "the initial communication" made in connection with the collection of Ms. Forgues' debt. As such, pursuant to *Oppong* and *Lee*, *supra*, the October 23, 2015 letter, being a subsequent communication, did not trigger the validation notice and cessation of collection requirements contained in § 1692g.

The Court need not reach the question raised by Defendants. First, as discussed at length above, the Court is persuaded that the October 23, 2015 letter is not a communication made in connection with the collection of a debt. Thus, Plaintiff's claims under § 1692g may be

13

dismissed on that ground alone. Second, the Sixth Circuit has not weighed in on this issue which is split among the circuits. As Plaintiff points out, a panel of the Ninth Circuit recently reached a conclusion contrary to that of *Oppong* and *Lee*, holding that "if there are multiple debt collectors that try to collect a debt, each one must send the required notice after its first communication with the alleged debtor about the debt." *Hernandez v. Williams, Zinman & Parham PC*, 829 F.3d 1068, 1070 (9th Cir. 2016). In *Hernandez*, the issue was before the court on summary judgment, and, in order to reach its decision, the Court engaged in a lengthy analysis of both the statutory text and the legislative history of the validation notice provision.

Here, Defendants merely assert that *Oppong* and *Lee* "established a sensible standard that accounts for the protections contemplated by the FDCPA and the practicalities of modern litigation," but they fail to comprehensively discuss why the *Oppong* and *Lee* standard is more sensible than the standard set forth in *Hernandez*. Defendants have provided no argument in relation to the statutory text itself or the legislative history. And, unlike *Hernandez* and *Oppong*, this case has not had the benefit of discovery, which might better inform a judicial decision on the issue. Further, assuming the Court were to accept that the *Oppong* and *Lee* standard should apply, Defendants have not adequately addressed whether the Notice that was provided to Ms. Forgues in foreclosure proceedings comports with the requirements under the FDCPA, such that the Court might conclude as a matter of law that the Notice was "the initial communication," under § 1692g(a). In light of these circumstances, and given that Defendants have already established that Plaintiff's § 1692g claims are not plausible on a different basis, the undersigned need not reach this important and consequential issue.

**B. Whether there were improper communications with third-parties**

Plaintiff argues that Defendants improperly communicated with third parties about her debt in violation of § 1692c(b).  Ms. Forgues alleges that the third party is the state court of appeals.  The improper communications were Wallace's and CLL's filing of their notice of appearance and their appellate brief.

Section 1692c(b) states:

Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, *in connection with the collection of any debt*, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b) (emphasis supplied).  As Plaintiff points out, and Defendants acknowledge, "a court" is not listed among the excepted persons and entities.  Nonetheless, Plaintiff does not allege a plausible claim to relief under § 1692c(b).

First, by virtue of the rules of procedure, Wallace and CLL had "the express permission of a court of competent jurisdiction" to appear and file briefing on behalf of their client.  Not only were Defendants permitted to defend the appeal, the rules of court required it.  Second, by filing the appeal, Ms. Forgues essentially consented to Wallace and CLL communicating with the court of appeals with respect to the issues she raised in her brief.

Moreover, in light of the *Goodson* factors listed *supra*, Defendants' communications with the court of appeals were not communications "in connection with the collection of any debt." First, Wallace and CLL did not have a prior debt collection relationship with Plaintiff.  The attorney and the firm appeared solely for the purpose of defending an appeal of the trial court's

15

denial of Plaintiff's Rule 60(b) motion. Defendants' appellate brief did not discuss any demand for payment or indicate that a balance was due; it did not state that it was an attempt to collect a debt; and it did not threaten consequences should the Plaintiff fail to pay. Further, this was not an unsolicited communication by Defendants, as the brief and notice of appearance were filed in response to Plaintiff's own decision to file an appeal. While it is arguable that the filings were submitted by a debt collector, it is not apparent that the court filings were part of a strategy to make payment more likely. The *Goodson* factors weigh overwhelmingly toward the conclusion that Defendants' filings were not communications "in connection with the collection of any debt."

Finally, the undersigned agrees with the observation of one district judge that "[a]lthough not explicit in the statute's text, it is unlikely that the term 'third party' was meant to include a court, given the context and the statute's purpose." *Stephens v. Manley Deas Kochalski*, LLC, No. CV 16-3845, 2016 WL 6804441, at *2 (E.D. Pa. Nov. 16, 2016). To accept Plaintiff's argument otherwise would lead to the absurd result that in order to avoid an FDCPA violation, Defendants would be required to allow the state court appeal to proceed unopposed.

In sum, the undersigned concludes that Plaintiff has not stated a plausible claim for relief under § 1692c(b).

### C. Whether Defendants violated 15 U.S.C. § 1692c(c) by communicating with Plaintiff about a debt following her cease and desist letter.

Plaintiff's First Amended Complaint contains the allegation that Defendants violated 15 U.S.C. § 1692c(c) when they communicated with Plaintiff about the debt after she sent a cease and desist letter on June 8, 2016. However, in her opposition to Defendants' motion to dismiss, Plaintiff concedes that she alleged no specific facts showing that Defendant communicated with

16

her after that date. Therefore, Defendant's motion to dismiss should be granted with respect to Plaintiff's § 1692c(c) claim.

### D. Whether Defendants' communications with Plaintiff were false or misleading in violation of 15 U.S.C. § 1692e

Finally, assuming *arguendo* that Defendant's communications were made in connection with the collection of a debt, Plaintiff has not stated a plausible claim that those communications were false or misleading in violation of 15 U.S.C. § 1692e. A violation of § 1692e occurs when a debt collector uses "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. In this instance, the alleged "false, deceptive, or misleading representation or means" was CLL and Wallace's failure to disclose "the name of the creditor to whom the debt is owed" in the October 23, 2015 letter. 15 U.S.C. § 1692g(a)(2). Plaintiff argues that not only did Defendants fail to disclose the name of the creditor, but she seems to suggest that they *could not* have done so because by the terms of the FDCPA no creditor existed. As stated in Plaintiff's amended complaint "[t]his suit is about debt collection without a creditor."

To reach this conclusion, Plaintiff points out that under the FDCPA, the term "creditor" is defined as follows:

> The term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, *but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another*.

15 U.S.C. § 1692a (emphasis supplied). In this case, Plaintiff acknowledges that based on Defendants' communications with her "the least sophisticated consumer would have known . . . that each Defendant sought to collect a debt on behalf of Deutsche Bank, trustee, and believe that

17

Deutsche Bank was, therefore, the current creditor to whom she owed her debt." (FAC ¶14). However, Plaintiff argues that Deutsche Bank cannot be a creditor under the FDCPA because it received assignment of the debt while the debt was in default. Thus, Plaintiff maintains, because none of the Defendants are creditors, "[a]ll their communications, whether initial or subsequent ones, when viewed through the eyes of a least sophisticated consumer, are misleading representations and deceptive means." (FAC, ¶70).

It is unclear what Ms. Forgues is arguing precisely, but the Court will construe her argument in two different ways. First, to the extent she means to argue that Deutsche Bank is a debt collector and not a creditor, but that there exists some unidentified third party creditor, then, on the assumption that the October 23, 2015 letter was a collection attempt, she would perhaps state a claim that Defendants failed to disclose the identity of the creditor in their October 23, 2015 letter. However, as discussed above, the Court is persuaded that the October 23, 2015 letter was not connected to the collection of a debt. Thus, on this interpretation of Plaintiff's claim, Defendants' motion should be granted.

Second, insofar as Ms. Forgues means to argue that the "creditor" somehow ceased to exist when Deutsche Bank was assigned the debt, that argument is rejected. First, she supplies no relevant legal support for the claim that "debt collection without a creditor" is somehow actionable under the FDCPA, and there is no legal support for the idea that there is "no person or entity involved that is or qualifies as 'the creditor to whom the debt is owed'" (FAC ¶51). The Court is not aware of any statutory basis for the proposition that a creditor ceases to exist when a person obtains debt owed to another for the purpose of collection, and the only case law Plaintiff cites in her brief does not support her position. Plaintiff relies on *Janetos v. Fulton Friedman &*

*Gullace, LLP*, 825 F.3d 317, 319 (7th Cir. 2016). In that case, the plaintiffs alleged that a defendant law firm which represented plaintiff's creditor, Asset Acceptance, Inc., violated the FDCPA when it sent collections letters that failed to disclose the "name of the creditor to whom the debt was owed." The court held that the letters violated § 1692g(a) because they did not clearly identify Asset Acceptance as the creditor. *See Janetos v.Fulton Friedman & Gullace*, LLP, 825 F.3d 317, 319 (7th Cir. 2016). That case does not support Plaintiff's theory of creditor-less debt collection.

Furthermore, it is undeniable that the debt is owned by and owed to someone, whether it is Deutsche Bank itself or some unidentified third party. Indeed, Plaintiff herself acknowledges that the debt is owed to *someone*, without identifying who that person is. In paragraph 44 of the first amended complaint, she alleges the following:

> Each of the Defendants is a person who uses the mails in a business the principal purpose of which is to obtain payment or liquidation of debts, either by personal solicitation or legal proceedings, and principally or regularly collects or attempts to collect, directly or indirectly, *debts owed or due, or asserted to be owed or due another*.

(FAC ¶44). Thus, assuming the truth of this paragraph, the word "another" refers to an entity or person to whom the debt is owed, and that person or entity would be the creditor. (See also FAC ¶31). On the other hand, Plaintiff also seems to assert a contradictory position that Deutsche Bank is the owner of the debt, as evidenced by her reference to Plaintiff's Exhibit E – the assignment of mortgage indicating that Chase Bank sold the debt without recourse to Deutsche Bank. (FAC ¶43; Doc. No. 5-5). Assuming the truth of this paragraph, it is apparent that Deutsche Bank is the entity to whom the debt is owed, making it the creditor. Based on Plaintiff's complaint it is not entirely to whom the debt is owed, but clearly it is owed to someone, which means a creditor exists.

19

Finally, and in any event, as addressed at length above, Plaintiff's first amended complaint fails to plausibly establish that Defendants' communications with Plaintiff were made "in connection with the collection of any debt." Therefore, even if Defendants used "false, deceptive, or misleading representation[s] or means," there would be no FDCPA liability in this case. Accordingly, Plaintiff has failed to state a plausible claim under §1692e.

## IV. Conclusion

For the foregoing reasons, it is recommended that Defendants' motion to dismiss be GRANTED.

                                        *s/Jonathan D. Greenberg*
                                        Jonathan D. Greenberg
                                        United States Magistrate Judge

Date: June 26, 2017

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981);** *Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**